# EXHIBIT A

REDACTED

KILPATRICK TOWNSEND & STOCKTON LLP
Frederick L. Whitmer, *pro hac vice*
1114 Avenue of the Americas
New York, NY 10036
Email: fwhitmer@kilpatricktownsend.com
Telephone: (212) 775-8773
Facsimile: (212) 775-8821

Matthew C. Holohan, (SBN 239040)
Kent T. Dallow, *pro hac vice*
1400 Wewatta Street
Denver, CO 80202
Email: mholohan@kilpatricktownsend.com
       kdallow@kilpatricktownsend.com
Telephone: (303) 571-4000
Facsimile: (303) 571-4321

A. James Isbester (SBN 129820)
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Email: jisbester@kilpatricktownsend.com
Telephone: (415) 273-4335
Facsimile: (415) 576-0300

Attorneys for Plaintiffs Hunter Douglas Inc. and Andrew J. Toti Testamentary Trust

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HUNTER DOUGLAS, INC. and ANDREW J. TOTI TESTAMENTARY TRUST,<br><br>        Plaintiffs,<br><br>    v.<br><br>CHING FENG HOME FASHIONS CO., LTD.,<br><br>        Defendant. | **CASE NO. 3:17-CV-01069-RS**<br><br>**PLAINTIFFS' AMENDED DAMAGES CONTENTIONS**<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |

Pursuant to Patent L.R. 3-8, the Court's Case Management Scheduling Order (Dkt. No. 64), and the Joint Stipulation and Order to Enlarge Time to Provide Amended Damages Contentions & Responses (Dkt. 92), Plaintiffs and Counterclaim-Defendants Hunter Douglas, Inc. and Andrew J. Toti Testamentary Trust ("Plaintiffs") hereby serve their Amended Damages Contentions (the "Contentions") to Defendant and Counterclaim-Plaintiff Ching Feng Home Fashions Co., Ltd. ("Defendant"). These Amended Contentions are made solely for the purposes of this action and are preliminary in nature as discussed below.

These Contentions relate to United States Patent Nos. 9,359,814 (the "'814 Patent"), 9,328,554 (the "'554 Patent"), and 9,316,051 (the "'051 Patent) (collectively the "Asserted Patents"). Plaintiffs base these Contentions on their current knowledge, understanding, and belief as to the facts and information available to them as of the date of these Contentions. This case is still in the early stages of discovery. Plaintiffs have not yet completed their investigation, collection of information, discovery, or analysis related to this action. Accordingly, Plaintiffs reserve the right to supplement, amend, or modify the information contained herein, and to use and introduce such information and any subsequently-identified documents at trial. In particular, Plaintiffs reserve their right to amend and supplement their damages theories as further discovery is taken and as Defendant provides additional details about its products, activities, and financials.

**Patent L.R. 3-8(a)**

In accordance with Patent L.R. 3-8(a), based on Plaintiffs' current knowledge, understanding, and belief as to the facts and information available to them as of the date of these Contentions, Plaintiffs identify the following categories of damages that they are seeking for the asserted infringement:

**1. Lost Profits**

Plaintiffs intend to seek recovery of their lost profits that have resulted from Defendant's sales of the Accused Products. As discussed below, Defendant has not produced sales information for the Accused Products, but Plaintiffs intend to seek recovery on their lost profits on the number of window coverings they could reasonably have been expected to sell but for the Accused Product sales by Defendant. Although at this time Plaintiffs do not have sufficient information to

calculate lost profits by the application of a *Panduit* Test, at least in part, below are facts known to Plaintiffs supporting their request for lost profits:

- **Significant Demand for the Patented Product:** Plaintiffs have provided factual support of significant sales of their products utilizing the patented LiteRise® system, which practices at least one of the asserted patents. Specifically, Plaintiffs have made significant sales of its own patented products, totaling at least ▮▮▮▮▮▮▮▮▮ in gross sales, thus supporting Plaintiffs' theory of damages based on lost profits. *See* HD-CF 00013616. Plaintiffs have further provided factual support of significant sales for the LiteRise® product. (*See e.g.* HD-CF00010180 (LiteRise® Units, Sales and Cost of Sales), HD-CF00010182 (Sales and Distribution Report), HD-CF00009891 (LiteRise® Expenses), HD-CF00008198 (LiteRise® Units and Net Sales).   Further, while Plaintiffs do not have the information necessary to determine the exact number of sales of the Accused Products, on information and belief, Defendant has also had significant sales of its Accused Products.

- **Competition in the Same Market:** Both Plaintiffs' products and the Accused Products are window covering products. Both Plaintiffs' products and the Accused Products are cordless window coverings. (*See e.g.* CFHF_000341, 342, 343, 345 (Defendant's website printouts)). In fact, a google search of "Cordless Cellular Shades" returns Plaintiffs' shades as well as ads and links to JC Penney Cellular Shades (where Defendant's products can be found) and Home Depot's website (where Defendant's products can be found) and Bed Bath and Beyond's website (where Defendant's products can be found) – all on the first page of results. Thus, both Plaintiffs' products and Defendant's products are sold online directly to customers. Both Plaintiffs' products and Defendant's products are sold by retailers, including competitors (Defendant's products are sold at Lowes (CFHF_0001754); Plaintiffs' products are sold at Home Depot (http://www.homedepot.com/services/blinds-installation/). Although Defendant has not produced sales and pricing information for the Accused Products, Plaintiffs have produced pricing information (*see e.g.* HD-CF00007733, 00007699, 00007671, 00007629,

00007585, 00007557, 00007511, 00007481) that supports this factor.  Furthermore, on information and belief, the evidence will further show that Plaintiffs and Defendant are competitors in the market.

- **Non-infringing Substitutes:** Plaintiffs are not aware of any available, acceptable, non-infringing substitute products.  Defendant has not produced any information regarding non-infringing alternatives at this time.

- **Loss of Market Share:** Plaintiffs are the market leader in window coverings. However, its market share would be higher, but for Defendant's sales of the Accused Products.

- **Capacity:**  While Plaintiffs do not have the information necessary to determine the exact number of sales of Accused Products because Defendant has not yet produced this information, on information and belief, the evidence will show that Plaintiffs had the manufacturing and marketing ability to actually make the sales lost due to Defendant's infringement.

- **Amount of Profit:**  Defendant has not produced sales and pricing information for the Accused Products.  However, on information and belief, this evidence, once produced, will allow Plaintiffs to compute the lost revenue for sales it claims it would have made but for Defendant's infringement less the costs incurred making those lost sales.  For example, Plaintiffs have provided factual support of units sold, sales, and costs for the LiteRise® product.  (*See e.g.* HD-CF00010180 (LiteRise® Units, Sales and Cost of Sales), HD-CF00010182 (Sales and Distribution Report), HD-CF00009891 (LiteRise® Expenses), HD-CF00008198 (LiteRise® Units and Net Sales).

As mentioned above and discussed further below, Plaintiffs do not have sufficient information at this time to compute the lost profits to which they are entitled and identify the items listed below in Section 3-8(b) as information required to complete this computation.

**2. Price Erosion**

Plaintiffs reserve the right to seek recovery of damages under a price erosion theory.  As discussed above with respect to lost profits, Plaintiffs' sales of their own products covered by the Asserted Patents have been profitable. But for the price erosion, or at least the inability to raise

1  prices, resulting from the presence of Defendant's infringing products in the market, Plaintiffs'
2  marginal profits would have been greater.  At this time, and although Plaintiffs have produced
3  pricing information (*see* HD-CF00007733, 00007699, 00007671, 00007629, 00007585,
4  00007557, 00007511, 00007481) and sales and costs information for the LiteRise® product (*e.g.*
5  HD-CF00010180, HD-CF00010182, HD-CF00009891, HD-CF00008198), Defendant has not
6  provided pricing or cost information.  Thus, Plaintiffs have insufficient information to fully
7  evaluate a reasonable price erosion theory and Plaintiffs identify the items listed below in Section
8  3-8(b) as information required to complete this computation.

9  **3. Reasonable Royalty**

10  Plaintiffs are the exclusive licensee of the patents in suit, and ▮▮▮▮▮▮▮▮▮▮▮▮
11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ thus further supporting Plaintiffs' theory
12  of damages based on lost profits.  (*See* HD-CF 00003587-00003597).  Thus, ▮▮▮▮▮▮
13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs believe that the appropriate theory of damages in this case
14  is a theory of lost profits.  However, 35 U.S.C. § 284 states that "the court shall award the
15  claimant damages adequate to compensate for the infringement, but in no event less than a
16  reasonable royalty…."  Therefore, Plaintiffs reserve the right to seek recovery of damages under a
17  reasonable royalty theory, according to 35 U.S.C. § 284.  At this time, Plaintiffs have insufficient
18  information to fully evaluate a reasonable royalty damages theory based on a *Georgia-Pacific*
19  analysis or an established royalty.  Plaintiffs identify the items listed below in Section 3-8(b) as
20  information required to complete this computation.

21  **4. Other Form of Damages**

22  Plaintiffs also intend to seek recovery of damages based on Defendant's willful
23  infringement of the Asserted Patents.  Defendant's knowledge of its infringement is based at least
24  on Plaintiffs' marking of their own products.  Defendant's knowledge of its infringement is also
25  based on the filing of Plaintiffs' Complaint for patent infringement, which was filed on July 29,
26  2016.  Defendant has continued to make, use, sell, offer for sale, and/or import infringing products
27  into the United States despite knowing that there was an objectively high likelihood of
28  infringement of the Asserted Patents.  To the extent Defendant did not know of the objectively

high likelihood of infringement, it was so obvious that it should have been known to Defendant. Based on this deliberate and willful infringement, Plaintiffs seek a trebling of damages. Plaintiffs further contend that this is an exceptional case under 35 U.S.C. § 285, and seek an award of attorneys' fees.

In addition, Plaintiffs seek costs, prejudgment, and post-judgment interest on the damages caused by Defendant's infringement of the Asserted Patents.

At this time, Plaintiffs calculate that the damages period for the '051 Patent begins on April 19, 2016, that the damages period for the '554 Patent begins on May 3, 2016, and that the damages period for the '814 Patent begins on June 7, 2016. However, Plaintiffs reserve their right to seek damages under 35 U.S.C. § 154(d) and to modify the above damages periods due to information uncovered during discovery. As mentioned above and discussed further below, Plaintiffs do not have sufficient information at this time to compute the full extent of the other forms of damages to which they are entitled and identify the items listed below in Section 3-8(b) as information required to complete this computation.

**Patent L.R. 3-8(b)**

In accordance with Patent L.R. 3-8(b) and based on Plaintiffs' current knowledge, understanding and belief as to the facts and information available to them as of the date of these Contentions, Plaintiffs identify the following information that they require to provide a fulsome response to the required disclosures:[1]

1. Identification of, and production of supporting documentation, related to each Accused Product, including documentation and identification of all Defendant's products that are "reasonably similar" to or operate in a "reasonably similar" manner to all Accused Products, including, among other things:
    a. The external model or product number, name, trademark, and/or other designation;

---

[1] Plaintiffs hereby incorporate by reference the definitions from their First Set of Requests for Production of Documents and things to Defendant and First Set of Interrogatories to Defendant, which were both served on Defendant on June 2, 2017.

      b.    The identification of, and production of supporting documentation, related to all bills of materials or BOMs related to the Accused Products.

      c.    the internal model or product number, name, and/or other designation; and

      d.    the identification of, and production of supporting documentation related to, the operation, layout, parts, and functionality of the entire mechanism (including all constituent parts and mechanisms) used to raise, lower, stop, or otherwise move or maintain the position of the Accused Products.

2. All financial and sales information and documentation for the Accused Products, including, among other things:

      a.    All revenue, profit, costs, and expenses associated with the Accused Products on a quarterly or monthly basis, including but not limited to, gross profit, gross revenue, net profit, net revenue, and all variable and/or incremental costs.

      b.    the average selling price associated with the Accused Products on a quarterly or monthly basis;

      c.    the Date each Accused Product was first offered for sale or actually sold in the United States;

      d.    the Date each Accused Product was first imported into the United States;

      e.    the total number of units of the Accused Products manufactured, imported, offered for sale, or sold in the United States;

      f.    if an Accused Product has been discontinued, the Date of its last importation into the United States and the Date of its last sale in the United States; and

      g.    identification of, and production of supporting documentation related to, each Third-Party to whom Defendant provides or sells any Accused Products or with whom Defendant has entered into an agreement relating to the sale and/or distribution of any Accused Product.

3. Identification and production of all license agreements related to the Accused

Products, including, among other things:

    a.    identification of, and production of supporting documentation, related to all Third-Parties with whom Defendant has entered into a license, covenant not to sue, or any other agreement related to the Accused Products;

    b.    identification of, and production of supporting documentation, related to royalty rates paid, and or any other consideration given, including any valuation of or value assigned to such consideration by Defendant, related to the Accused Products; and

    c.    identification of, and production of supporting documentation, related to all invoices and totals paid under all aforementioned agreements.

4. Identification of all customers of Defendant who purchase the Accused Products for resale and production of all purchase orders by customers, invoices to customers, customer store names, and product brand names under which the Accused Products are sold by customers.

5. Financial (revenue or profit) and/or unit projections for the Accused Products, including but not limited to, Financial projections for the Accused Products covering gross profit, gross revenue, net profit, and/or net revenue.

6. Marketing and advertising materials for the Accused Products including press releases, news articles, internally created materials, etc.

7. Consumer surveys including willingness to pay studies and feature analyses.

8. Any documents and information related to factors driving demand for purchases of Accused Products.

9. Any documents related and information related to the existence or non-existence of non-infringing alternatives or substitutes.

10. Industry discussions relating to the value of the Accused Products.

11. Market research on the window covering market, both internal and external, and any analyses of the marketplace.

12. Any internal competitive assessments or analyses related to the Accused Products

and Plaintiffs' products.

13. Deposition testimony, including, but not limited to, deposition testimony on the above issues.

14. Expert discovery and testimony including, but not limited to, expert discovery and testimony on the above issues.

As stated above, Plaintiffs base these Contentions on their current knowledge, understanding, and belief as to the facts and information available to them as of the date of these Contentions. This case is still in the early stages of discovery. Plaintiffs have served discovery requests on Defendant which cover the above information and Defendant has yet to fully comply with its obligations in response to Plaintiffs' discovery requests. As such, Plaintiffs have not yet completed their investigation, collection of information, discovery, or analysis related to this Action. Accordingly, Plaintiffs reserve the right to supplement, amend, or modify the information contained herein, and to use and introduce such information and any subsequently-identified documents at trial. In particular, Plaintiffs reserve the right to amend and supplement their damages theories as further discovery is taken and Defendant provides additional details about their products, activities, and financials.

DATED: November 13, 2017            Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Frederick L. Whitmer*
KILPATRICK TOWNSEND & STOCKTON LLP
Frederick L. Whitmer, *pro hac vice*
1114 Avenue of the Americas
New York, NY 10036
Email: fwhitmer@kilpatricktownsend.com
Telephone:  (212) 775-8773
Facsimile:   (212) 775-8821

Matthew C. Holohan, (SBN 239040)
Kent T. Dallow, *pro hac vice*
1400 Wewatta Street
Denver, CO 80202
Email: mholohan@kilpatricktownsend.com
            kdallow@kilpatricktownsend.com
Telephone:   (303) 571-4000
Facsimile:    (303) 571-4321

A. James Isbester (SBN 129820)
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Email: jisbester@kilpatricktownsend.com
Telephone:   (415) 273-4335
Facsimile:    (415) 576-0300

*Attorneys for Plaintiffs Hunter Douglas Inc. and Andrew J. Toti Testamentary Trust*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of November, 2017, a true and correct copy of the foregoing **PLAINTIFFS' AMENDED DAMAGES CONTENTIONS** was served on the following counsel of record:

Jay C. Chiu
K&L Gates LLP
1 Park Plaza
Twelfth Floor
Irvine, CA 92614
jay.chiu@klgates.com

Harold H. Davis, Jr.
Rachel Burnim
K&L Gates LLP
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
rachel.burnim@klgates.com
peter.soskin@klgates.com
timothy.walker@klgates.com

*Attorneys for Defendant,*
*Ching Feng Home Fashions Co., Ltd.*

　　　　　　　　　　　　　　　*/s/ Stephannie Stover*